IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **KIRSTEN CORRELL,** individually, and on behalf of all others similarly situated, | Case no. 20-cv-24858-CMA |
| *Plaintiff*, | **CLASS ACTION** |
| v. | **DEMAND FOR JURY TRIAL** |
| **ICONIC MORTGAGE CORP.,** a Florida corporation, | |
| *Defendant.* | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND TO STRIKE**

The Court should deny Iconic Mortgage's baseless motion in all respects.

First, Iconic's challenge to the validity of the Federal Communications Commission's 2003 Order determining that cellular phone numbers are entitled to the Telephone Consumer Protection Act's National Do Not Call Registry and internal do not call list protections is contrary to binding Eleventh Circuit precedent. Based on well-established Eleventh Circuit precedent, under the Hobbs Act, the Court lacks jurisdiction to consider the validity of the FCC's 2003 Order. *See Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015) ("District courts may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation"); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014) ("By refusing to enforce the FCC's interpretation, the district court exceeded its power."); *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453, 464 (11th Cir. 2012) ("To pin the tail on the donkey: a court without jurisdiction to review agency actions lacks jurisdiction to decide whether the agency had jurisdiction to act as it did.").

Regardless of whether the Eleventh Circuit's consistent interpretation of the Hobbs Act has been criticized, it remains binding law even after the Supreme Court's decision in *PDR Network*. *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2056 (2019) ("it may be that the Administrative Procedure Act permits PDR to challenge the validity of the Order in this enforcement proceeding even if the Order is deemed a 'legislative' rule rather than an 'interpretive' rule. We again say 'may' because we do not definitively decide this issue here."); *see also Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1109 (11th Cir. 2019) (Pryor, J., concurring) (citing *PDR* and explaining: "Under our interpretation, in 'a dispute between private parties,' the party that 'did not even initiate th[e] suit' may not be heard to argue that the agency order being enforced against him misinterpreted the law."). Here, the FCC's 2003 Order is a legislative rule, ending the inquiry into the Order's binding nature. Therefore, consistent with Eleventh Circuit law, Plaintiff Correll is entitled to pursue her claim under the TCPA's DNC and internal do not call provisions on behalf of class members who received Iconic's violative calls to their cellular telephone numbers.

Second, the Court should not strike Plaintiff's citations to the TCPA and its implementing regulations because it is neither redundant, immaterial, impertinent, nor scandalous matter. The Court should also not strike the complaint's references to other TCPA complaints against Iconic because those complaints support Plaintiff's class action and damages allegations.

## BACKGROUND

As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly

1

30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the DNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*. Additionally, under the TCPA, telemarketers are required to implement adequate policies and procedures for maintaining an internal do not call list prior to engaging in any telemarketing. *See* 47 C.F.R. §§ 64.1200(d)(1)-(6). The TCPA provides a private right of action to persons who receive calls in violation of 47 C.F.R. § 64.1200(c) or 47 C.F.R. § 64.1200(d). *See* 47 U.S.C. § 227(c)(5).

Iconic Mortgage provides consumers and veterans with mortgage loans. Amended Complaint (ECF 32) at ¶ 18. Iconic maintains a call center that generates leads for its mortgage officers. *Id*. at ¶ 19. Iconic places calls and sends text messages to these leads even when it does not have consent to call them, regardless of whether their phone numbers are registered on the national DNC. *Id.* at ¶ 20.

On February 27, 2019 Ms. Correll registered her Virginia area code phone number on the DNC. *Id*. at ¶ 30. Ms. Correll uses her cell phone for personal use only; it is not used for business purposes. *Id*. at ¶ 31. Notwithstanding, Iconic made repeated unsolicited calls and sent unsolicited text messages to Ms. Correll, despite her having registered her phone number with the DNC to prevent such calls and text messages. *Id*. at ¶ 21. To make matters worse, Iconic

continued to call and text Ms. Correll even after she repeatedly made it clear she wanted the communications stopped. *Id*. at ¶ 22.

Iconic Mortgage has also received numerous other complaints regarding its telemarketing misconduct, including through the Better Business Bureau:

- 

- "I have asked over and over to stop calling…"

- "Iconic mortgage, these people will not stop.calling and switch numbers after you block them, all times of the night and day and weekends, never had any dealings with them but they seem adamant on calling"

- "Robocall. Non-stop calls. Always a pause when I answer. Definite robocaller."

- "Unwanted Call"

*Id.* at ¶ 29.

Based on the calls she received, and the pervasiveness of Iconic's illegal telemarketing, the Plaintiff is seeking to represent the following proposed classes:

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification: (1) Defendant (or an agent acting on behalf of Defendant) called more than one time, (2) within any 12-month period, (3) where the person's residential phone number had been listed on the national Do Not Call registry for at least thirty days, (4) for substantially the same reason Defendant called or texted Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call/text Plaintiff, (b) it did not obtain prior express written consent, or (c) it obtained the person's cell phone number in the same way Defendant claims it obtained Plaintiff's cell phone number.
>
> **Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action through class certification: (1) Defendant (or an

3

agent acting on behalf of Defendant) called/texted more than one time in a twelve-month period on their residential phone number, (2) for substantially the same reason that Defendant called/texted Plaintiff, (3) after the individual made a stop call request.

**VTPPA Class:** All persons with a Virginia area code who from four years prior to the filing of the initial complaint in this action through class certification: (1) Defendant (or an agent acting on behalf of Defendant) called/texted, (2) for substantially the same purpose that Defendant called/texted Plaintiff, (3) after the person's Virginia phone number had been listed on the national Do Not Call registry, and for whom (4) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call/text Plaintiff, (b) it did not obtain prior express written consent, or (c) it obtained the person's cell phone number in the same way Defendant claims it obtained Plaintiff's cell phone number.

**VTPPA Stop Class:** All persons with a Virginia area code who from four years prior to the filing of the initial complaint in this action through class certification: (1) Defendant (or an agent acting on behalf of Defendant) called/texted, (2) for substantially the same purpose that Defendant called/texted Plaintiff, (3) after the individual made a stop call request.

*Id.* at ¶ 47.[1]

# ARGUMENT

**A. Plaintiff's Proposed DNC Class Properly Includes Consumers Who Received Telemarketing Calls from Iconic Mortgage on their Residential Cell Phone Numbers.**

As a remedial statute that was passed to protect consumers from unwanted automated telephone calls, the TCPA is construed broadly to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013)). "If proposed interpretations of the TCPA are equally plausible, the scales tip in favor of the consumer." *Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563, 576 (W.D. Pa. 2017).

### I. Residential Cell Phone Numbers are Protected by the DNC.

Many Americans communicate using their cellular phones and, in some instances, a cellular telephone is the only telephone a consumer may have. Not surprisingly, the President of

---

[1] Iconic Mortgage's motion does not challenge the sufficiency of either of Plaintiff's Virginia Telephone Privacy Protection Act claims.

4

the United States, the FTC, and the FCC all stated, even before the National Do Not Call Registry's effective date, that wireless numbers were covered by the Registry laws. George W. Bush, Public Papers of the Presidents of the United States: Book I at pp. 702-03, June 27, 2003, available at http://www.gpo.gov/fdsys/pkg/ PPP-2003-book1/html/PPP-2003-book1-doc-pg702.htm; 68 Fed. Reg. at 44,146-47; 68 Fed. Reg. at 4,632-33. Furthermore, wireless numbers on the Registry are presumed to be "residential" numbers under FCC's rules. *Id.*

The FCC noted in 2003 that "there is nothing in section 227 to suggest that only a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA." *In re Rules & Regs. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14038, ¶ 35 (July 3, 2003). The FCC "conclude[d] that wireless subscribers may participate in the national do-not-call list." *Id.* at 14039 ¶ 36. "[W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" *Id.*

In fact, Congress's desire to include wireless number on the Registry is evident from their subsequent conduct. In September 2003, shortly before the Registry rules were to take effect, a district court in Colorado blocked the Registry. *Mainstream Mktg. Servs., Inc. v. FTC*, 283 F. Supp. 2d 1151, 1171 (D. Colo. 2003). One argument the telemarketers in that case made was that Congress had not authorized the creation of the Registry. Id. at 1168-71. Within days, Congress and the President responded by enacting Public Law 108-82, which granted FTC authority "to implement and enforce a national do-not-call registry." National Do Not Call Registry, Pub. L. No. 108-82, 117 Stat. 1006 (2003). That act also specifically "ratified" the "do-not-call registry provision of the Telemarketing Sales Rule." *Id.*

The district court's decision blocking the Registry was quickly stayed, 345 F.3d 850 (10th Cir. Oct. 7, 2003), and then reversed, 358 F.3d 1228 (10th Cir. 2004). The Registry that

Congress authorized and that the Tenth Circuit allowed to take effect soon became "one of the most popular Federal programs in history." H.R. Rep. No. 110-485, at 4. Still, the system functioned as expected despite the rush of consumers wishing to avoid unwanted telemarketing calls. The Registry went from zero to 51 million registrations within 13 weeks. As a result of the dynamic growth of the Registry, the telemarketing industry subsequently complained to FTC and to Congress that—as Iconic argues here—there were phone numbers on the Registry that should not be there. Congress reacted by passing the Do-Not-Call Improvement Act of 2007, which moots most of Dish's arguments about the Registry. 15 U.S.C. § 6155. Rather than respond to the telemarketing industry's concerns by requiring the FTC to remove wireless numbers from the Registry, the new law actually heightened the Registry's protections.

First, the law rejected the telemarketing industry's concerns and directed that all phone numbers—including all of those that had been registered or would be registered—"shall not be removed" and were to be retained indefinitely on the Registry, specifically superseding FTC's five-year registration period. 15 U.S.C. § 6155(a). Second, and most relevant here, the law permitted three—and only three—categories of numbers to be removed from the Registry. *Id.* The first category of numbers that Congress directed could be removed is "disconnected and reassigned" numbers, which were to be removed by the FTC only upon consulting "national or other appropriate databases." *Id.* § 6155(b). The second category is "invalid telephone numbers," which the FTC may remove "at any time." *Id.* The third category is numbers that are removed "upon the request of the individual to whom the telephone number is assigned." *Id.* § 6155(a).

The Do-Not-Call Improvement Act of 2007 deals a fatal blow to Iconic's arguments, as Congress prohibited the FTC from removing the very phone numbers to which Iconic objects. 15 U.S.C. § 6155. In other words, Congress "could have written a statute" requiring removal of the

6

categories of phone numbers Dish wants removed, "but it did not." *E.g., Perez v. Wisconsin Dep't of Corrs.,* 182 F.3d 532, 534-35 (7th Cir. 1999) (rejecting an interpretation of a statute that sought to add requirements that Congress could have included, but did not). Instead, Congress told FTC to retain all the numbers on the Registry except the three limited categories that it authorized to be removed.

Congress's action is consistent with the role wireless telephones play in modern society. Cellular telephones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014). Cellular telephones can be used for residential purposes. *Stevens-Bratton v. Trugreen, Inc.,* No. 2:15-2472, 2020 U.S. Dist. LEXIS 17783, at *14 (W.D. Tenn. Feb. 4, 2020). The privacy interests they implicate are just as strong as wirelines, perhaps more so. *See Riley,* 573 U.S. at 393-98, 134 S.Ct. 2473; *see also Carpenter* v. *United States*, ––– U.S. ––––, 138 S. Ct. 2206, 2218, 201 L.Ed.2d 507 (2018).

A cellular telephone can satisfy the "residential telephone subscriber" element of § 64.1200(c) & (d). *See* 47 C.F.R. § 64.1200(e); *Phillips v. Mozes, Inc.*, 2:12-cv-04033-JEO, 2014 WL 12589671, at *6 (N.D. Ala. Sept. 3, 2014), report and recommendation adopted in relevant part by 2015 WL 12806594 (Jan. 26, 2015); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 349 (3d Cir. 2017) ("Although it is true that the TCPA placed particular emphasis on intrusions upon the privacy of the home in 1991, this expression of particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell phone calls.").

Not surprisingly, other courts have explicitly rejected Iconic's argument. *See Stevens-Bratton v. Trugreen, Inc.,* 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020) ("A cellular telephone can satisfy the 'residential telephone subscriber' element"): *Hodgin v. Parker*

7

*Waichman LLP*, No. 3:14-cv733-DJH, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015) (finding defendant's "assertion that cell phone numbers are not allowed on the national do-not-call list . . . meritless" and applying presumption that any number registered on the NDNC is used for residential purposes); *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 926 (C.D. Ill. 2014) (stating that "[t]he FCC determined that . . . wireless customers could register their wireless telephone numbers on the Registry").

> **II.  Eleventh Circuit Law Bars Iconic from Even Challenging the FCC's Order Finding that Cell Phone Numbers are Entitled to the DNC's Protections.**

Iconic's motion to dismiss is predicated on the fallacy that Iconic Mortgage is entitled to challenge the FCC's 2003 Order in this Court. However, as a matter of express Eleventh Circuit law, it isn't. *See Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015) ("District courts may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation"); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014) ("By refusing to enforce the FCC's interpretation, the district court exceeded its power."); *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453, 464 (11th Cir. 2012) ("To pin the tail on the donkey: a court without jurisdiction to review agency actions lacks jurisdiction to decide whether the agency had jurisdiction to act as it did."). In fact, what Iconic proposes that the Court do here, is precisely the approach the Eleventh Circuit rejected in *Mais* – i.e., to find that the FCC interpretation of a term in the TCPA "could not be reconciled with the statutory language, and therefore" to "discard… the administrative agency's rulemaking determination." *Mais*, 768 F.3d at 1119-20.

Although the Eleventh Circuit's interpretation of the Hobbs Act has been criticized, as the Eleventh Circuit itself has acknowledged, it remains binding law even after the Supreme Court's decision in *PDR Network*, in which the Supreme Court expressly reached no conclusion

8

as to whether a private litigant like Iconic can challenge an FCC order in a civil suit like this one. *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2056 (2019) ("it may be that the Administrative Procedure Act permits PDR to challenge the validity of the Order in this enforcement proceeding even if the Order is deemed a 'legislative' rule rather than an 'interpretive' rule. We again say 'may' because we do not definitively decide this issue here."); *see also Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1109 (11th Cir. 2019) (Pryor, J., concurring) (citing *PDR* and explaining: "Under our interpretation, in 'a dispute between private parties,' the party that 'did not even initiate th[e] suit' may not be heard to argue that the agency order being enforced against him misinterpreted the law.").

Accordingly, because the FCC's 2003 Order is a legislative rule, there can be no basis for determining that cell phone numbers registered with the DNC are not entitled to the DNC's protections, and the Court should deny Iconic's motion to dismiss. *See, e.g.*, *Goodson v. OS Rest. Servs., LLC*, No. 5:17-cv-10-Oc-37PRL, 2017 U.S. Dist. LEXIS 71923, at *3 (M.D. Fla. May 9, 2017) ("When a Rule is promulgated in accordance with the formal 'notice and comment' rule-making provisions of the Administrative Procedure Act ('APA'), it is a 'Legislative Rule,' which has the 'force and effect of law.'"); *see also Warshauer v. Solis*, 577 F.3d 1330, 1337 (11th Cir. 2009) ("The DC Circuit has set out general principles to be used in determining whether a rule is interpretive. First, although not dispositive, the agency's characterization of the rule is relevant to the determination. Second, [a]n interpretative rule simply states what the administrative agency thinks the statute means, and only reminds affected parties of existing duties. On the other hand, if by its action the agency intends to create new law, rights or duties, the rule is properly considered to be a legislative rule. The Seventh Circuit has

pointed out that legislative rules have effects completely independent of the statute." (internal citations omitted)).

### B. Plaintiff's Allegations Regarding the TCPA's Requirements and Prior TCPA Complaints Against Iconic Mortgage Are Relevant and Should Not Be Stricken.

Defendant does identify a basis to strike any of the allegations in the complaint. Allegations in a complaint should be stricken only if they are "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Allegations regarding the requirements of the TCPA and its implementing regulations are relevant to Plaintiff's claims arising from those requirements, and Iconic does not otherwise identify why they are immaterial, redundant, impertinent, or scandalous.

Defendant also argues that paragraphs 26 through 29 of the complaint are immaterial to the case and unfairly prejudicial. This is not so. Prior complaints regarding Iconic Mortgage's calling practices support Plaintiff's class allegations, including numerosity and commonality. The online complaints demonstrate that there are people similarly situated to Plaintiff. They also demonstrate that Iconic knew of the TCPA violative conduct and indeed encouraged it. These types of internet complaints are properly included in the complaint as they support class allegations and Defendant's knowing and willful violation of the TCPA. *See, e.g., Wiseberg v. Toyota Motor Corp.*, Civil Action No. 11-3776 (JLL), 2012 U.S. Dist. LEXIS 45849, at *38 (D.N.J. Mar. 30, 2012) ("anonymous Internet complaints could be relevant to the issue of knowledge").

### CONCLUSION

For the foregoing reasons, the Court should deny Iconic Mortgage's motion to dismiss and strike in total.

Respectfully Submitted,

**KIRSTEN CORRELL**, individually and on behalf of other similarly situated individuals,

Dated: January 25, 2021

/s/ *Avi Kaufman*
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the putative Classes*